UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL MARZETTE, individually and on behalf of all others similarly situated, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>SP PLUS CORPORATION, )<br>)<br>Defendant. ) | Case No. 20-cv-05119<br><br>Hon. Mary M. Rowland |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

**I.      Introduction**

At its heart, the present case is a labor dispute, which can only be heard in arbitration. SP Plus Corporation ("SP Plus") is a signatory to various collective bargaining agreements subject to the Labor Management Relations Act ("LMRA"). Plaintiff was a member of a Union throughout his entire employment. The Complaint alleges that about thirteen years into Plaintiff's employment, SP Plus implemented a timekeeping system. The time clock was implemented pursuant to SP Plus' collective bargaining agreement ("CBA") with Plaintiff's Union. Plaintiff now seeks to bring class action claims under the Illinois Biometric Information Privacy Act ("BIPA") that both this Court and the Seventh Circuit have deemed preempted by federal labor law. *Williams v. Jackson Park SLF, LLC,* Case No. 19-cv-8198 (N.D. Ill. Sept. 24, 2020) (Rowland, J.) (relying upon *Miller v. Sw. Airlines Co.*, 926 F.3d 898 (7th Cir. 2019)). Additionally, every other District Court to consider this issue has agreed that BIPA claims brought by unionized employees are preempted by federal labor law. *See Frisby v. Sky Chefs, Inc.*, 2020 WL 4437805, at *4 (N.D. Ill. Aug. 3, 2020); *Gray v. The Univ. of Chi. Med. Ctr., Inc.*, 2020 WL 1445608, at *4 (N.D. Ill. Mar. 25, 2020); *Fernandez v. Kerry, Inc.*, 2020 WL 1820521, *3 (N.D. Ill. April 10,

2020); *Peatry v. Bimbo Bakeries USA, Inc.*, 2020 WL 919202, at *4 (N.D. Ill. Feb. 26, 2020). This case is no different, and the claims should be dismissed with prejudice, as it is not possible for Plaintiff to replead them.[1]

## II.   Background

### A.   The Complaint

Plaintiff worked for Defendant SP Plus in a union-represented position in Illinois from August 8, 2002 to November 21, 2016. (Harvey Decl., Dkt. 1-2, ¶ 5). Plaintiff's Complaint alleges that beginning in 2015, he was required to scan his fingerprint to clock in and out of work. (Compl., Dkt 1-1, ¶¶ 7, 19, 30-31, 47).[2] Despite the fact that he was union-represented, Plaintiff claims that SP Plus was obligated to deal with him directly instead of through his legally-authorized representative – his Union – and that SP Plus was required to: (1) provide him individually with a data retention schedule and destruction guidelines; (2) inform him individually of the specific purpose or length of time that his "fingerprints" would be stored; and (3) obtain his individual, written consent. (*Id.*, ¶¶ 48-50, 57). Based on these allegations, Plaintiff contends SP Plus is liable to him individually and to a class of individuals and must pay him damages under BIPA. (*Id.*, ¶¶ 54, 58).

---

[1] Since its removal papers, Plaintiff's counsel have been on notice that Plaintiff's claims are preempted by federal labor law. (Dkt. 1). SP Plus further advised Plaintiff's counsel that SP Plus would be moving to dismiss on labor law preemption grounds. Additionally, after the Court's decision in *Williams*, SP Plus provided Plaintiff's counsel with a copy of the *Williams* decision and invited counsel to voluntarily dismiss Plaintiff's claims. Since counsel has failed to do so, any dismissal now should with prejudice, as Plaintiff has no basis to maintain these claims.

[2] SP Plus disputes that its timekeeping system actually collects, captures, retains, receives, or otherwise obtains fingerprints. SP Plus merely recites Plaintiff's allegations.

### B. Plaintiff's Union and The Time Clock Implementation

Plaintiff was employed by SP Plus at its Chicago Midway Airport site first as a hiker and customer service employee, and then as a cashier and customer service representative. (Harvey Decl., Dkt. 1-2, ¶ 5). From the beginning of his employment in 2002, Plaintiff belonged to Teamsters Local Union No. 727 ("the Union"). (*Id.*, ¶¶ 2, 5). SP Plus or its predecessor company and the Union entered into a series of collective bargaining agreements ("CBAs"), which governed the terms and conditions of Plaintiff's employment at SP Plus. (*Id.*, ¶ 6-7). Plaintiff alleges that SP Plus implemented a new, finger-scan timekeeping system in 2015. (Compl., Dkt. 1-1, ¶ 30). At that time, the relevant CBA ran from November 1, 2011 to October 31, 2016. (Harvey Decl., Dkt. 1-2, at ¶ 6). SP Plus and the Union entered into a new CBA effective November 1, 2016, which remains in effect today. (*Id.*) In sum, the first CBA applied when SP Plus implemented the timekeeping system in 2015, and the second CBA applied through the end of Plaintiff's employment in November 2016. (Compl., Dkt. 1-1, ¶ 30; Harvey Decl., Dkt. 1-2, ¶¶ 5-7).

These CBAs recognize the Union as Plaintiff's "sole and exclusive" bargaining agent. (Harvey Decl., Dkt. 1-2, ¶ 8; Dkt. 1-2 at 32, 62). They also contain a broad management-rights provision. (Dkt. 1-2 at 49, 77). Additionally, the CBAs require SP Plus to accurately record employee work time, placing no limitations on the methods used to do so. (Harvey Decl., Dkt. 1-2, ¶ 8; Dkt. 1-2 at 50, 77). The CBAs contain a grievance procedure for resolution of disputes regarding the CBAs, with the dispute culminating in arbitration under the auspices of the Federal Mediation and Conciliation Service. (Dkt. 1-2 at 34-35, 64-65.)

### C. Illinois Biometric Information Privacy Act (BIPA) and Labor Law

"[T]here can be no doubt that how workers clock in and out is a proper subject of negotiations between unions and employers—is, indeed, a mandatory subject of bargaining." *Miller*, 926 F.3d at 903. *Miller*'s language has been broadly construed to include BIPA Section

3

15(a) and (b) claims. *Williams* at 5, n. 3 (citing *Miller*, 926 F.3d at 903)("purported BIPA violations—whether related to lack of consent, retention and destruction schedules, or unauthorized disclosure to another party—'are topics for bargaining between unions and management' and are 'question[s] for an adjustment board.'")[3]

As this Court is aware, Section 15(a) of BIPA governs policies regarding biometric retention and destruction and requires that such retention schedules be followed. *See* 740 ILCS 14/15(a). The Seventh Circuit held in *Miller*, and confirmed in *Bryant*, that BIPA Section 15(a) policies are mandatory subjects of bargaining and are thus preempted by federal labor law. *Miller*, 926 F.3d at 903 ("retention and destruction schedules for biometric data . . . are topics for bargaining between unions and management"); s*ee also Bryant v. Compass Group USA Inc.*, 2020 WL 2121463 (7th Cir. May 5, 2020) (unionized employees have standing to assert violations of Section 15(a) because they face "the 'prospect of a material change in [their] terms and conditions of employment,' if the employer, in light of the Act, had to bargain with the employee union to obtain employees' consent or change how employees clocked in"); *accord*, *Williams*, at 5, n. 3 ("purported BIPA violations" related to "retention and destruction schedules" are topics for bargaining that must be handled through a grievance framework).

BIPA Section 15(b) permits an individual or her "legally authorized representative" to receive notice that biometric data is being collected, used or stored, and provides further that a "legally authorized representative" can consent to the use, collection or storage of biometric data. 740 ILCS 14/15(b). Under *Miller*, a union is included within BIPA's definition of a "legally authorized representative." *Miller*, 926 F.3d at 903 (BIPA "provides that a worker *or an*

---

[3] *See also Fernandez v. Kerry, Inc.*, 2020 WL 1820521, *3 (N.D. Ill. April 10, 2020) (claims asserted by unionized plaintiffs for violations of sections 15(a) and (b) of BIPA are preempted by the LMRA "because the claim could result in additional pay or benefits or in the elimination of the practice.")

4

*authorized agent* may receive necessary notices and consent to the collection of biometric information" and, thus, the "contention that a union is not a 'legally authorized representative' for this purpose" is without merit). BIPA Section 15(b) claims are also subject to mandatory bargaining and, thus are also preempted by labor law. *Williams* at 5, n. 3 (citing *Miller*, 926 F.3d at 903) ("the *Miller* Court also addressed this question when it determined that whether the CBA management rights clause gave rise to consent regarding biometric data is a question for an adjustment board.").

### III. Legal Standard

A dismissal based on labor law preemption is properly brought as motion for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), which has a preclusive effect. *Miller*, 926 F.3d at 901 (either Rule 12(c) or 12(b)(1) dismissal appropriate because "either a substantive or jurisdictional label ends the litigation between these parties and forecloses its continuation in any other judicial forum"). *See also Williams* at 3 (construing motion for dismissal on labor law preemption grounds as a Rule 12(b)(1) motion for lack of subject matter jurisdiction).

"Section 301 of the LMRA preempts a state law claim if resolution of the claim "requires the interpretation of a collective-bargaining agreement." *Williams* at 4 (citing *Lingle v. Norge Div. of Magic Chef*, 486 U.S. 399, 413, 108 S. Ct. 1877, 1884 (1988)). Such preemption includes claims based on direct rights under a CBA, and also claims "'substantially dependent on analysis of a collective bargaining agreement.'" *Williams* at 4 (citing *Gray v. Univ. of Chicago Med. Ctr., Inc.,* 2020 WL 1445608, at *2 (N.D. Ill. Mar. 25, 2020)). *See also Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987)); *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985); *Miller*, 926 F.3d at 904; *Healy v. Metro. Piet & Exposition Auth.*, 804 F.3d 836 (7th Cir. 2015)).

Labor law preemption is broadly construed. An employer need only advance a "non-frivolous argument" that the complained-of conduct was authorized by a management-rights

clause, leading to the inexorable conclusion that the claim cannot be resolved without interpretation of the agreement and is thus preempted. *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1179 (7th Cir. 1993) (holding that the LMRA preempted plaintiffs-employees' state law privacy claim because employers had a "non-frivolous argument that the surveillance of which the plaintiffs complain[ed] is authorized, albeit implicitly by the management-rights clause of the agreement"); *cf. Bhd. of Locomotive Eng'r and Trainmen v. Union Pacific R.R. Co.*, 879 F.3d 754, 756, 758 (7th Cir. 2017) (explaining that the standard for preemption under the analogous RLA is "quite low" and the employer only needs to make a "non-frivolous" argument that interpretation of the collective bargaining agreement is at stake").

**IV.     Argument**

Plaintiff's claims are preempted by federal labor law and must go to arbitration. In *Lingle*, the Supreme Court held that claims requiring interpretation of a CBA are preempted by the LMRA. *Lingle*, 486 U.S. at 407, 413. Plaintiff's claims require interpretation of the CBA, as determined by the Seventh Circuit in *Miller* and this Court in *Williams*.

In *Miller*, current and former employees of Southwest Airlines filed a lawsuit in Illinois state court asserting that Southwest Airlines violated Sections 15(a), (b), and (d) of BIPA by implementing a finger scan time clock without their consent, failing to publish protocols, and using third-party vendors to implement the systems, which plaintiffs claimed was a prohibited disclosure. *Miller*, 926 F.3d at 901. Southwest Airlines removed the case to the Northern District and sought dismissal of the lawsuit to arbitration on grounds that the dispute would require interpretation of the CBA that governed the terms and conditions of the plaintiffs' employment. *Miller v. Southwest Airlines*, 18-cv-86 (N.D. Ill.), Dkt. 1, 28. The district court dismissed the claims, and the plaintiffs appealed. *Miller*, 18-cv-86, Dkt. 44 (initial opinion), 51 (opinion denying Rule 59 motion). Among the arguments advanced by Southwest on appeal as to why the dispute

6

required interpretation of the CBA were: (1) there was a question whether the union consented to the collection of "fingerprints" on behalf of its members when it agreed to the CBA's broad management-rights clause; and (2) there was a question whether the union consented to the collection of "fingerprints" on behalf of its members since there was no objection.

The Seventh Circuit held that either question was sufficient to find labor law preemption and thus dismissed the BIPA claims to arbitration. *See Miller*, 926 F.3d at 903 ("Whether [the] unions *did* consent to the collection and use of biometric data, or perhaps grant authority through a management-rights clause, is a question for an [arbitrator]."). Likewise, it held that the other parts of the BIPA claims (e.g., retention schedules) also belong in arbitration. *Id.* ("Similarly, the retention and destruction schedules for biometric data, and whether [employers] may use third parties to implement timekeeping and identification systems, are topics for bargaining between unions and management."). Moreover, it rejected the argument that BIPA's focus on privacy rights takes it outside the scope of labor law preemption. *Id.* at 904 ("That biometric information concerns workers' privacy does not distinguish it from many other subjects, such as drug testing, that are routinely covered by collective bargaining and on which unions give consent on behalf of the whole bargaining unit.").

At bottom, *Miller* held that "it is not possible even in principle" to address BIPA claims involving unionized employees without considering what the union knew and consented to, which are questions for an arbitrator, not the court. *Id.* at 904. As a result, *Miller* made very clear that dismissal of BIPA claims is appropriate at the pleadings stage, and that further inquiry would be improper. *Id*. ("What Southwest told the union, whether it furnished that information in writing, when these things happened, and what the union said or did in response, are matters not in this record. They are properly not in this record, as they are topics for resolution by an adjustment board rather than a judge. Perhaps a board will conclude that the union did not consent or did not

receive essential information before consenting, just as plaintiffs assert. But the board must make that decision and supply any appropriate remedy.").

### A. This case is indistinguishable from *Miller* and its progeny.

This case is indistinguishable from *Miller* and the decisions of this Court that have applied *Miller* in the LMRA context. In *Miller*, *Peatry*, *Gray*, *Fernandez* and this case, union-represented employees filed claims against their employers contending that their employers should have provided them with data retention schedule and destruction guidelines and obtained individual consent under BIPA. More recently, *Williams* involved claims from unionized employees alleging violations of Sections 15(a), (b), and (d). *Williams* at 5. The claims at issue in this case for alleged violations of Sections 15(a) and (b) mirror the claims in *Miller*, which this Court in *Williams* deemed to be preempted by the LMRA. *Id*. at 4. Moreover, in all five cases, the plaintiffs' conditions of employment—including the extent of privacy and the topic of timekeeping—were governed by CBAs with broad management-rights provisions. *See Miller,* 926 F.3d at 903; *Gray*, 2020 WL 1445608 at *4; *Peatry*, 2020 WL 919202 at *4; *Fernandez,* 2020 WL 1820521 at *6. *See also Williams* at 4-6 (noting that managements rights clause in the CBA at issue in the case is similar to the clause in *Miller*, which provided "[t]he right to manage and direct the work force, subject to the provisions of this Agreement is vested in and retained by the Company.")

The preemption standard is also the same: whether resolution of the BIPA claims requires interpretation of the CBA. Like those cases, Plaintiff's claim requires interpretation of the CBA, because it is not possible "even in principle" to decide the claims without asking whether the union (through the management-rights clause, which must be interpreted) consented on the employees' collective behalf. *See Miller*, 926 F.3d at 904; *Williams* at 4-6; *Gray*, 2020 WL 1445608 at *4; *Peatry*, 2020 WL 919202 at *3–*4; *Fernandez*, 2020 WL 1820521 at *6.

        **1.**        **The LMRA and RLA apply the same preemption standard.**

As this Court has already recognized, *Miller* applies with equal force to the LMRA context because "the RLA standard is 'virtually identical to the pre-emption standard the Court employs in cases involving § 301 of the LMRA." *Williams* at 6, n. 4 ("although *Miller* involved the Railway Labor Act ("RLA"), the RLA preemption standard is "virtually identical" to the LMRA standard."); *see also Brown v. Ill. Central R.R. Co.*, 254 F.3d 654, 667 n.13 (7th Cir. 2001) (applying *Lingle* to resolve the question of RLA preemption and explaining that, "the [Supreme] Court adopted *Lingle*'s standard for addressing LMRA preemption to resolve claims of RLA preemption"); *Peatry*, 2020 WL 919202 at *3 (quoting *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 260 (1994)). For that reason, several decisions in the Northern District of Illinois – and notably, this Court's recent decision in *Williams* – have already held that *Miller* required a finding that nearly identical BIPA claims were preempted by the LMRA. *Williams* at 4-7; *Gray*, 2020 WL 1445608, at *3; *Peatry*, 2020 WL 919202 at *3; *Fernandez*, 2020 WL 1820521 at *6.

        **2.**        **The claims asserted here are indistinguishable from the claims in *Miller*, *Williams*, *Peatry*, *Gray*, and *Fernandez*.**

The claims in *Miller*, *Williams*, *Peatry*, *Gray*, and *Fernandez* are indistinguishable from this case. Here, Plaintiff sued his former employer alleging that his use of a finger scan timekeeping system to clock in and out of work violated BIPA and asserts that his employer should have provided him individually with a data retention schedule and destruction guidelines and should have obtained his individual consent. (Compl., Dkt. 1-1, ¶¶ 48-50, 57). That was also the case in *Miller*, *Peatry*, *Gray*, and *Fernandez*. *See Miller*, 926 F.3d at 901 (alleging that employers implemented finger scan systems without their consent, failed to publish retention and destruction policies, and disclosed fingerprints to third parties without consent); *Gray*, 2020 WL 1445608 at *1 (nurse alleged that her employer violated BIPA because it required her to scan her handprint without getting her written consent and without providing a policy identifying a retention schedule

9

and guidelines for destroying data); *Peatry*, 2020 WL 919202 at *1–*2 (alleging employer violated sections 15(a), (b), and (d) of BIPA by collecting and disclosing scans to third parties without consent and failing to provide a public retention schedule); *Fernandez*, 2020 WL 1820521, at *1 (alleging that employer violated BIPA by requiring them to scan fingers without consent and failing to publish a retention schedule). In all of those cases, the LMRA preempted the employees' BIPA claims. *Miller*, 926 F.3d at 903; *Gray*, 2020 WL 1445608, at *3; *Peatry*, 2020 WL 919202, at *3; *Fernandez*, 2020 WL 1820521, at *6.

This Court came to the same conclusion in *Williams*. Like *Miller*, *Peatry*, *Gray* and *Fernandez*, the plaintiff in *Williams* alleged that his former employer should have instituted a publicly-available retention schedule or guidelines for destroying biometric identifiers (Section 15(a)), obtained consent before collecting employees' biometric identifiers (Section 15(b)), and obtained consent before disclosing biometric information (Section 15(d)). *Williams* at 2. This Court found that "the LMRA preempts a state law claim if resolution of the claim 'requires the interpretation of a collective bargaining agreement.'" *Id.* at 4. Relying on *Miller*, the Court held that "BIPA's text allows authorized agents, such as unions, to act on members' privacy rights." *Id.* at 5. And, "whether the CBA management rights clause gave rise to consent regarding biometric data is a question for an adjustment board." *Id.* at 6.

The facts of this case weigh more heavily in favor of dismissal than in *Williams*. It appears that the reason why *Williams* was not dismissed with prejudice is because the plaintiff contended that he was not a union member for the first 30 days of his employment. *Id*. at 7-10. Here, Plaintiff was a member of Local 727 for the entire duration of his employment. (Harvey Decl., Dkt. 1-2, ¶ 5). Moreover, the Complaint alleges that SP Plus implemented the timeclock at issue in this case in "late 2015." (Compl., Dkt. 1-1, ¶ 30). At that time, a Collective Bargaining Agreement effective November 1, 2011 to October 31, 2016 governed the terms and conditions of Plaintiff's

employment. (Harvey Decl., Dkt. 1-2, ¶¶ 5-8). Thus, the facts of this case demonstrate that this case should be dismissed with prejudice.

**V.      Conclusion**

For the foregoing reasons, SP Plus respectfully requests the Court to dismiss Plaintiff's claims with prejudice.

Dated: October 8, 2020

Respectfully submitted,

SP PLUS CORPORATION

By: */s/ Melissa A. Siebert*

Melissa A. Siebert (*masiebert@shb.com*)
SHOOK, HARDY & BACON LLP
111 South Wacker Drive
Chicago, Illinois 60606
Tel: (312) 704-7700
Fax: (312) 558-1195

Kali R. Backer (*kbacker@shb.com*) (*pro hac vice*)
SHOOK HARDY & BACON LLP
1660 17th Street, Suite 450
Denver, Colorado 80202
Phone: (303) 285-5300
Fax: (303) 285-5301

*Counsel for Defendant SP Plus Corporation*

## CERTIFICATE OF SERVICE

I certify that, on October 8, 2020, the foregoing was filed with the Court using the Court's electronic case filing system, which will send notification to all registered users.

Dated: October 8, 2020                              */s/ Melissa A. Siebert*  

                                                                                              *Counsel for Defendant*